

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
In Re:
AHRON BERLIN

                Debtor.
----------------------------------------------------------x
ELLIOT ZARETSKY, HAROLD ZARETSKY,
SHIRLEY ZARETSKY AND MAXI-AIDES, INC.

                            Plaintiffs.

  -against-

AHRON BERLIN,

                            Defendant.
---------------------------------------------------------x

Case No.: 12-74600-reg
Chapter 7

Adv. Pro. No.: 12-08371-reg

## DEFENDANTS' REPLY IN SUPPORT OF MOTION
## TO RECONSIDER, ALTER OR AMEND JUDGMENT

AHRON BERLIN The defendant/debtor files this reply to the opposition of plaintiffs to the motion for reconsideration filed by defendant on July 2, 2014, had moved before this Honorable Court pursuant to Federal Rule of Civil Procedure 59(e) for a Motion to Reconsider, alter or amend the Judgment dated June 19, 2014 finding Plaintiffs' awards against the Debtor in the amounts set forth in the State Court judgment are nondischargeable based on testimony of Mr. Elliot Zaretsky.

This motion was properly brought pursuant to both F.R.C.P. Rule 59, Bankruptcy Rule 9023, and Local Rule 9023-1. See also *Krohn v. Burton (In re Swift),2014 Bankr. LEXIS 88,2014 WL 103229(Bankr. E.D.N.Y. Jan. 9, 2014)*. This motion was properly brought as a motion to reconsider on several grounds pursuant to the rules,

Primarily to prevent a manifest injustice, for clear error of law and fact and because a fraud was perpetrated on this Court, as well as for any other ground the Court may find applicable.

Additionally, plaintiffs opposition to the instant motion is defective pursuant to Bankruptcy Rule 9006, and F.R.C.P. Rule 6, for failure to serve timely, and for their late response. While defendant received the opposition on Friday afternoon in the mail a mere two hours before the Shabbath, I prepared this reply in a hurry, while not having a proper chance to present the following, nonetheless, I have attempted to present to the Court some of my arguments as best as I can in this short two days timeframe.

The instant motion stems from the Plaintiffs fraudulent and scandalous default summary judgment default in the libel suit in State Court against the defendant, claiming inter alia that defendant had defamed plaintiffs by purportedly having publicized emails with false information against plaintiffs.

**mmm**

The Court made a finding of willful and malicious intent, after Plaintiffs raised collateral estoppel based on the state court judgment. Without such estoppels there could have been no such finding, since defendant would have been able to present that

plaintiffs case was fraudulent and false. Defendant had raised the issue that no collateral estoppel was available to plaintiffs in this case, however the Court did not consider that, neither did defendant have a chance to present his arguments as to same.

During the summary judgment motion pre-trial and during the trial Plaintiff attempted to present that there was no collateral estoppel on numerous grounds, and that plaintiffs had improperly used it. Defendant respectfully submits that there is no collateral estoppel or res judicata as further explained. Plaintiffs testimony besides being false as set out in the motion to reconsider and as further explained, had no value, because the Court must make a finding that defendant indeed had sent those emails. Plaintiffs reliance on estoppel is misplaced, hence no finding of willful and malicious can be had without first establishing that those emails were sent, a fact that defendant had no opportunity to present.

Defendant had no reason to present that his intent was not malicious because he had another intent for instance, because he had no intent at all, there can be no intent to something that defendant never ever did or even dream about. Defendant had no chance to present this to the Court.

Plaintiffs indeed never had any knowledge of such emails until he found out from the suit, nor of any of the acts in this purported scheme claimed by plaintiffs. Defendant

posses material testimony and proof that plaintiffs had conspired with fraudulent intent to harm defendant by causing a certain Mr. Wacholder to send those emails without defendant's knowledge.

Defendant has since the trial recently received judgment against Mr. Wacholder in the amount of 2,275,000 by the Kings County Supreme Court for having caused and conspired with the plaintiffs for this purported libel scheme and default judgment.

Subsequent to the trial defendant received judgment by the New York State Supreme Court Kings County, which found that defendant was a victim of a conspiracy between Mr. Wacholder and plaintiffs, that defendant did not have a full and fair opportunity to defend the libel suit, because Mr. Wacholder had colluded with the instant plaintiffs to send those emails, he had colluded with plaintiffs to present himself as an attorney and had acted to harm defendant's interests, for a long time after the suit, until defendant was able to uncover the fraud. While defendant had presented some of the facts pre-trial, the Court had not considered those, due to the fact that plaintiffs improperly used estoppel against defendant

Despite the fact that defendant is a victim of this horrendous fraud and never publicized any material against plaintiffs, defendant attempted nonetheless to prove that such purported publication cannot be deemed wilfull and malicious, for the mere fact that plaintiffs have lied, while plaintiffs have been previously found in prior

-4-

Court's to have acted in bad faith and against the disabled and blind consumers. These facts defendant only found out long after the purported publication of emails took place.

Plaintiffs, attempt to subvert the issues, and pint to testimony from trial in the instant case, to show that defendant had purportedly publicized negative information against plaintiffs, to portray them as acting in bad faith against the blind and disabled industry, however plaintiffs simply ignore the voluminous records of the Eastern District Court proceedings spanning a few years, in which evidence was presented and findings made against them in not only a similar fashion, but directly finding them, to have done things that they testified against defendants.

Defendant request the chance to submit those records from the prior Court, they are voluminous, but nonetheless prove defendants case. While plaintiffs were fully aware of their fraudulent intent and that such evidence and findings were made against them in open Court, they still continued with their false testimony against defendant. To illustrate just one minor example, plaintiffs did not refute a single word in their opposition the fact that the Veterans department had excluded them from procurement, long before the purported emails were publicized. However plaintiffs have no problem to continue to maintain that their testimony in this Court is true. It is everything but truth.

Nothing in defendants papers or arguments should be construed as an admission to such purported defamation scheme was ever done by defendant. Nothing is further the truth, that defendant never acted, never even intended to or dreamed about such, nor had any such knowledge of any purported defamation, emails or other act fraudulently claimed by the plaintiffs . Defendant had therefore never acted in any way against plaintiffs, defendant had other worries and troubles in his own life than to be busy with such nonsense. The Defendant is merely pointing out that this purported scheme claimed by the plaintiffs was fraudulent, and that Plaintiff had testified falsely in this Court as well, as can be readily seen from the records of both the Second Circuit as well as the Eastern District Court of New York, and from the voluminous records of the media citing those Court's.

Whether this Court had notice of such prior Court findings or the media articles, is irrelevant, it is plaintiffs who testified with false and fraudulent intent, fully knowing the fraud they were perpetrating on this Court, as well as against defendant.

As stated above, pre-trial and during trial in the instant adversary proceeding, plaintiff relied upon and argued that defendant is barred from raising and arguing the issue of the truth of the allegations without which no willful and malicious finding can be made, with plaintiffs relying on collateral estoppels from the State Court judgment. Under New York State law the defendant could not be estopped from raising such issues. The issues have never previously been determined on the merits in the State

Court, and defendant had no chance to present evidence to the contrary, that the libel was false, and that he never sent those emails.

It is well established in New York law, that a summary judgment on default cannot be used as collateral estoppel since the issues have not been decided on the merits and has not actually been litigated. The Appellate division second department in *S.D.I. Corp. v. Fireman's Fund Ins. Companies, 617 N.Y.S.2d 790,792, 208 A.D.2d 706 (N.Y.A.D. 2 Dept., 1994)* established that a summary judgment issued on default of a party, has no estoppel since the issues were not decided on the merits.

> "The proponent of collateral estoppel as the basis for the granting of summary judgment has the burden of demonstrating that the issues which are determinative of his right to this drastic relief have been necessarily and actually decided in a prior litigation (Kaufman v. Lilly & Co., 65 N.Y.2d 449, 492 N.Y.S.2d 584, 482 N.E.2d 63; Mannix Indus. v. Antonucci, 191 A.D.2d 482, 594 N.Y.S.2d 327; Weber v. Kessler, 177 A.D.2d 843, 576 N.Y.S.2d 458; Kingston v. State Farm Mut. Auto. Ins. Co., 165 A.D.2d 970, 561 N.Y.S.2d 859). "An issue is not actually litigated if, for example, there has been a default * * * [or] a failure to place a matter in issue by proper pleading" (Kaufman v. Lilly & Co., supra, at 456-457, 492 N.Y.S.2d 584, 482 N.E.2d 63, citing Restatement [Second] of Judgments § 27, comments d, e, at 255-257; Gilberg v. Barbieri, 53 N.Y.2d 285, 441 N.Y.S.2d 49, 423 N.E.2d 807; see also, Giordano v. Patel, 177 A.D.2d 468, 575 N.Y.S.2d 900; Seaman v. Fichet-Bauche N. Am., 176 A.D.2d 793, 575 N.Y.S.2d 122). The plaintiff has not met its burden of showing that the issues upon which it bases its right to judgment against Fireman's Fund have been "actually [208 A.D.2d 709] litigated". It is possible, indeed it is likely, that the judgment against Summit General was based on its default in opposing the plaintiff's motion.
>
> It is impossible to determine whether the issue of the plaintiff's entitlement to judgment against Summit General has been actually litigated. There is no way to know whether the counter order dated November 29, 1990, and the judgment dated January 10, 1991, were

> based on a resolution of the merits, or based instead on Summit General's failure to oppose the plaintiff's first motion. It clearly would have been proper to grant this motion strictly on procedural grounds, in light of the fact that Summit General offered no opposition.
>
> While it is true that Fireman's Fund submitted affidavits in opposition to this motion, these affidavits were initially addressed not only to the plaintiff's application for judgment against Summit General, but also to that branch of the motion in which the plaintiff sought to strike all of the defendants' answers. That these affidavits were examined by the court does not mean that the court's grant of judgment in favor of S.D.I. and against Summit General was on the merits rather than on default. "There is, in short, no basis for determining from the present record exactly what specific issues were litigated or decided in that prior [motion] so that collateral estoppel may not be invoked" (Seaman v. Fichet-Bauche N. Am., supra, at 794, 575 N.Y.S.2d 122, citing Kaufman v. Lilly & Co., supra; Matter of Halyalkar v. Board of Regents of State of N.Y., 72 N.Y.2d 261, 268, 532 N.Y.S.2d 85, 527 N.E.2d 1222)."

In the instant case, it is even more so, because the State Court summary judgment on default clearly did not determine any issues. The subsequent inquest for damages, had not been on liability, and was only for damages, and was again on default, and New York case law dictates that such issues were not deemed determinative in any event.

Defendant had in the past come across many other similar case law in both New York appellate courts, New York Court of appeals, and in the Second Circuit which confirms same, but in the hurry of filing this reply defendant was unable to include all such cases.

As a matter of law, Court's must take extreme precaution before applying collateral estoppel against a debtor in discharge proceedings, *See In re Hyman, 502 F.3d 61, 65 (2nd Cir., 2007)*;

> "To determine whether collateral estoppel applies to the Surrogate's Court's judgment, we look to New York law. See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); Colon v. Coughlin, 58 F.3d 865, 869 n. 2 (2d Cir.1995). Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action. Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 455-56, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985); see Jeffreys v. Griffin, 1 N.Y.3d 34, 39, 769 N.Y.S.2d 184, 801 N.E.2d 404 (2003); Buechel v. Bain, 97 N.Y.2d 295, 303-04, 740 N.Y.S.2d 252, 766 N.E.2d 914 (2001); see also Khandhar v. Elfenbein, 943 F.2d 244, 247 (2d Cir.1991). Under New York law, collateral estoppel is [502 F.3d 66] a flexible doctrine and whether to apply it a particular case depends on "general notions of fairness involving a practical inquiry into the realities of the litigation." Jeffreys, 1 N.Y.3d at 41, 769 N.Y.S.2d 184, 801 N.E.2d 404.
> 
> On this appeal, these principles must be analyzed jointly with others that have special significance in the bankruptcy context. The basic policy animating the Bankruptcy Code is to afford the "honest but unfortunate" debtor a fresh start. Marrama v. Citizens Bank of Mass., ___ U.S. ___, 127 S.Ct. 1105 1107, 166 L.Ed.2d 956 (2007); Grogan v. Garner, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); DeTrano, 326 F.3d at 322. The consequences to a debtor whose obligations are not discharged are considerable; in many instances, failure to achieve discharge can amount to a financial death sentence. In view of these harsh consequences, exceptions to discharge are to be narrowly construed and genuine doubts should be resolved in favor of the debtor. In re Renshaw, 222 F.3d 82, 86 (2d Cir.2000); In re Hayes, 183 F.3d 162, 167 (2d Cir.1999)."

While the libel suit and resulting litigation is still pending appeals, it is another factor to be considered. See *Connecticut General Life Ins. Co. v. Cole, 821 F.Supp. 193, 201 (S.D.N.Y., 1993);*

> *"Duverney v. State of New York, 96 Misc.2d 898, 410 N.Y.S.2d 237, 245-46 (Ct.Cl.1978)* (stating in dictum that the existence of an appeal is a factor to be considered in determining whether a party had a full and fair opportunity to litigate an issue), aff'd, 76 A.D.2d 962, 429 N.Y.S.2d 70 (3d Dep't 1980). In New York, unlike other jurisdictions, the rule is that "the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding." Matter of Amica Mut. Ins. Co., 85 A.D.2d 727, 445 N.Y.S.2d 820, 822 (2d Dep't 1981). Although Duverney, 410 N.Y.S.2d at 245-46, indicates that the existence of an appeal should be considered in determining whether a full and fair opportunity to litigate the issue existed, it emphasizes that this is but one of the factors to be considered. The other factors to be considered include: "the size of the claim, the forum of prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." Schwartz v. Public Adm'r of County of Bronx, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 961, 246 N.E.2d 725, 729 (1969). Further, in Matter of Amica, 445 N.Y.S.2d at 822, the court stated in dictum that it would not apply collateral estoppel to a judgment if that judgment was substantially likely to be reversed on appeal because of a change in the applicable law"

See also *In re Moses (Bankr. E.D.N.Y., 2013) Case No. 10-51769-ess; Adv. Pro. No. 11-01286-ess;*

> "When a nondischargeability action arises from a judgment entered by another court, collateral estoppel is often invoked. Courts in this District and Circuit have noted that in such circumstances, collateral estoppel "must be applied with the utmost caution" to avoid inflicting upon a debtor the "severe" consequences of denying the discharge of debts where such denial may not be warranted. Indo-Med Commodities, Inc. v. Wisell (In re Wisell), 2011 Bankr. LEXIS 3112, at *20 (Bankr. S.D.N.Y. Aug. 16, 2011)."

Plaintiffs have procured their libel suit by both extrinsic as well as intrinsic fraud, defendant did not have an opportunity to present the facts and arguments, while plaintiffs have argued that this Court cannot look beyond the State Court default judgment. However in many instances in the Federal Court's including within this district, it was held that Court's may indeed look behind the judgment if justice warrants it, See *In re Slater, 200 B.R. 491, 495 (E.D.N.Y., 1996);*

> "Section 1738 "requires all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'" Kelleran v. Andrijevic, 825 F.2d 692, 694 (2d Cir.1987), cert. denied, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988), quoting, Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Accordingly, a bankruptcy court may look behind a state court judgment only if that judgment was procured by fraud or collusion, or where the rendering court lacked jurisdiction. Kelleran, 825 F.2d at 694; see also Stephens Fuel Co., Inc. v. Bay Parkway Nat'l Bank of Brooklyn, 10 F.Supp. 395, 397 (E.D.N.Y. 1935); In re Morton, 43 B.R. 215, 218 (Bankr.E.D.N.Y.1984); Bell v. Town Bd. of Pawling, 146 A.D.2d 729, 537 N.Y.S.2d 214, 215 (2d Dep't 1989); J.J. Miller Constr. Co. v. Berlanti Constr. Co., Inc., 197 N.Y.S.2d 818 (Sup.Ct. Westchester Cty.1960).

See also *In re Sanders, 408 B.R. 25, 35 (Bankr. E.D.N.Y., 2009);* and *In re Ward, 423 B.R. 22, 29 (Bankr. E.D.N.Y., 2010);*

> "Some cases have held that, notwithstanding the doctrine of res judicata, a New York state court's judgment is not given preclusive effect by the federal court if the judgment was procured by collusion or fraud. See Kelleran v. Andrijevic, 825 F.2d 692, 694 (2d Cir.1987), cert. denied, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); Goddard, 2006 WL 842925, at *7; In re Slater, 200 B.R. 491, 495 (E.D.N.Y.1996); County of Suffolk v. Long Island Lighting Co., 710 F.Supp. 1387, 1393 (E.D.N.Y.1989). This is because New York law permits collateral attacks on judgments obtained by extrinsic, as opposed to intrinsic, fraud. Slater, 200 B.R. at 496 (citing Altman v. Altman, 150 A.D.2d 304, 542 N.Y.S.2d 7, 9 (N.Y.App. Div.1989)). Extrinsic fraud involves the parties' "opportunity to have a full and fair hearing," while intrinsic fraud, on the other hand, involves the "underlying issue in the original lawsuit." Id. Other cases have held that a judgment is still given preclusive effect even it was obtained by fraud. See Gray, 2009 WL 1787710, at *6; Alaimo v. Gen. Motors Corp., No. 07-CV-7624, 2008 WL 4695026, at *6 (S.D.N.Y. Oct.20, 2008); Keys, 578 F.Supp.2d at 635-636; Marshall v. Grant, 521 F.Supp.2d 240, 246 (E.D.N.Y.2007). However, these cases do not address the distinction between extrinsic and intrinsic fraud, and the fraudulent acts alleged in those cases appear to constitute intrinsic fraud.
>
> It has also been held that the Rooker-Feldman doctrine does not prevent the collateral attack on a state court judgment which is alleged to have been procured through fraud, if the claim now asserted is independent from the claim that the state court judgment was erroneous. See Marshall, 521 F.Supp.2d at 245; Goddard, 2006 WL 842925, at *5-6; Mac Pherson v. State St. Bank & Trust Co., 452 F.Supp.2d 133, 140 (E.D.N.Y.2006)."

The Court in *In re Teltronics Services, Inc., 18 B.R. 705, 707 (E.D.N.Y., 1982)* stated;

> "The Supreme Court has recognized that res judicata should not rigidly operate to bar claims in bankruptcy proceedings when the court would otherwise be free to remedy fraudulent conduct. For example, in Brown v. Felsen, 442 U.S. 127, 132, 99 S.Ct. 2205 2209, 60 L.Ed.2d 767 (1979), although a debt had been reduced to judgment in State court, the Court concluded that res judicata should not foreclose the

bankruptcy court from traversing "unexplored paths that may lead to truth." Similarly, in Heiser v. Woodruff, 327 U.S. 726, 741, 66 S.Ct. 853, 860, 90 L.Ed. 970 (1946), Justice Rutledge, concurring, explained that absent prior opportunity for adjudication of the grounds alleged for subordination, the equitable power of a bankruptcy court supersedes strict application of res judicata:

"If, as the Court declared in Pepper v. Litton, the bankruptcy court has power to reject claims, even when previously allowed, `in whole or in part "according to the equities of the case,"\' 308 U.S. 295 at 304 60 S.Ct. 238 at 244, 84 L.Ed. 281, see 11 U.S.C. § 93(k), I find no reason for qualifying that rule in this case. It necessarily comprehends that the bankruptcy court in the allowance or rejection and ordering of claims shall not be bound by any broad or rigid rule of res judicata." (Footnote omitted.)"

See also *Parsons Steel, Inc v. First Alabama Bank, 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986); Kremer v. Chemical Construction Corporation, 456 U.S. 461,481-483, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). See also Richards v. Jefferson County Alabama, 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996),* holding that lack of proper representation is a bar to estoppel.

Additionally, the plaintiffs have been the subject of lengthy litigation in the Eastern District before Hon. Judge Spatt spanning a few years, which was thereafter confirmed at the Second Circuit, the sum total of those cases clearly present findings by those Courts that the plaintiffs have perpetrated a scheme against the disabled and blind, that they confused consumers. Thus it was the Federal Court's who had found the plaintiffs to have acted improperly against the disabled in numerous ways, much before the purported Libel scheme claimed against the defendant.

Plaintiffs in both the State Court as well as in this Court have claimed that they are innocent and well respected, that they have never acted wrongly against anyone, let alone the blind or disabled, and that it was the defendant who through the purported libel has damaged plaintiffs through the purported libel scheme by purportedly publicizing a false and negative image of plaintiffs, and that defendant was the first to publicize such information, causing harm to plaintiffs.

The record of the District Court and the Second Circuit is replete with the opposite, it clearly presents that the plaintiffs have acted against the disabled consumers and the blind in bad faith as determined by those Courts. For plaintiffs to testify in this Court to the contrary as the record reflects, is not only a manifest injustice, but a clear disrespect for the State Court, this Court, the District Court in the numerous proceedings in both Independent Living Aids, Inc. v. Maxi-Aids, Inc and in other cases as mentioned in defendants motion for reconsideration as well as the Second Circuit, presents that what plaintiffs attempt to portray in their testimony is far from the actual truth.

Besides this fraud, and besides the fact that defendant had no chance to properly present his case and innocence due to the plaintiff wrongly and improperly using collateral estoppel of the state default judgment. it was impossible for them to prove willful and malicious intend by defendant, when it was already proven in the Eastern

District Court long ago that plaintiffs had indeed been involved in acts that are far from decent against the Blind and disabled industry to say the least.

For plaintiffs to have acted with willful malicious intent or with any intent for that matter, even if one is to accept that defendants had sent and publicized those purported emails, which is indeed not the case, plaintiffs first have to establish that the libel was false and that defendant had fabricated the facts and was first to publicize them.

Despite the fact that defendant maintains his innocence and is the victim of a horrendous fraud, willful and malicious intent cannot be had when the actual libel was false, when the plaintiffs were proven long before to have acted improperly, which was highly publicized in the industry and the media and found so by the prior Courts.

For plaintiffs to argue that none of that is related, and that the issues were different, and that the defendant continues to defame plaintiffs, is nothing more than an further attempt to diffuse the issues, and cover up their fraud, to confuse the Courts. Defendant respectfuly requests to be able to supplement the record with the prior Court records.

Defendants intent in citing the Braille monitor was not for the Court to take judicial notice, rather it was merely used as background to show how the prior District and

Appellate Courts rulings and findings were presented in many media articles and industry monitors, rather than plain news articles publicizing their own news sources, this was plain and simple covering the Court's findings, which they covered in full. Whether the Court takes judicial notice or not, this cannot change the facts that the prior records of the Eastern District Court and the Second Circuit all of which present clear evidence of gross misbehavior by plaintiffs, and which renders plaintiffs testimony against defendant a big joke, and makes a mockery of this and all other Courts.

Additionally, for the Court to rely on plaintiffs testimony for a finding of willful and malicious intent, while plaintiffs testimony is replete with perjury and falsity, and that without defendant even having a chance to present all other evidence, would be manifest injustice, would allow the fraud on the Court to continue, and would deprive defendant.

Defendant further wishes to inform the Court, that the instant adversary proceeding like the default libel suit in the State Court, stems and is based upon tortious interference, by continuously damaging defendants business, as explained in defendants action 14-cv-3028 currently pending in the Eastern District. Thus this proceeding encompasses stern claims which require final adjudication at the District Court level, and by interfering with defendants co-debtor in that libel suit contract with plaintiffs, and was designed to damage and interfere with the above.

Plaintiffs contend that defendants have been warned and are acting in violation of the law, by continuing to defend his innocence in Court. Interestingly, plaintiffs believe that defending ones innocence and arguing merits in a Court of law would be a violation of defamation law. Defendant would be delighted to see law or case law cited on such an absurd suggestion.

Plaintiffs further contend that the Second Circuit has no relations here, however the Court in that summary order affirmed the District Court findings and the evidence presented that the plaintiffs caused confusion to the blind and disabled consumers, the District Court found numerous activities perpetrated by the plaintiffs that when looked as a whole, clearly shows that Plaintiffs were not the innocent victims of a purported libel scheme, but rather have been engaged in deceptive practices against the blind and disabled, thus such purported libel framing plaintiffs with shady practices, has long been found by the Court's to be true. Indeed defendant was unaware of all this evidence until a long time after the purported libel scheme should have taken place, and defendant is only citing to those to show that plaintiffs came with unclean hands.

Plaintiffs also contend that defendant did not raise those arguments pre-trial, however defendant had indeed notified plaintiffs of said Court's which they conveniently ignored in both at the summary judgment level and at the pre-trial documentary

exchange and to the Court, however plaintiffs chose to ignore all that and continue with their false testimony.

WHEREFORE, the Defendant respectfully requests that the Court allow defendant to supplement the record with the prior Court records showing plaintiffs fraud; grant the Motion for reconsideration in its entirety; and grant such other and further relief as is just and proper.

Dated: BROOKLYN, NEW YORK
       Novemeber 4, 2014

                                                AHRON BERLIN

## CERTIFICATE OF SERVICE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------
Case No.: 12-74600-reg

In Re:
AHRON BERLIN

                Debtor.
-------------------------------------------------------
ELLIOT ZARETSKY, HAROLD ZARETSKY,
SHIRLEY ZARETSKY AND MAXI-AIDES, INC.

                Plaintiffs.   Adv. Pro. No.: 12-08371-reg

   -against-

AHRON BERLIN,
                Defendant.
-------------------------------------------------------X

## CERTIFICATE OF SERVICE

The undersigned certifies that on __10/4/2014__
                           (date of mailing)
a copy of the annexed papers **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO RECONSIDER, ALTER OR AMEND JUDGMENT** was served by United States Postal Service within the State of New York, upon

FORCHELLI, CURTO, DEEGAN,
SCHWARTZ, MINEO, & TERRANA, LLP
Attorneys for Plaintiffs
By: /s/ Brian J. Hufnagel
Brian J. Hufnagel
The Omni
333 Earle Ovington Blvd, Suite 1010
Uniondale, New York 11553

MICHAEL A. MIRANDA (MAM-6413)
240 Mineola Boulevard
The Esposito Building
Mineola, New York 11501

AHRON BERLIN
/s/